E-FILED
Tuesday, 14 November, 2017 05:25:02 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARK ASHWILL, *on behalf of himself and all others similarly situated,* | ) ) ) ) | |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT AND TRIAL BY JURY DEMAND** |
| v. | ) ) | |
| TEPPER & MANN, P.C., AND MIDSTATE COLLECTION SOLUTIONS, INC | ) ) ) ) | |
| Defendants. | ) ) | |

## NATURE OF ACTION

1.     Plaintiff Mark Ashwill ("Plaintiff") brings this putative class action against Defendants Tepper & Mann, P.C. ("Tepper") and Midstate Collection Solutions, Inc. ("Midstate") (collectively, "Defendants") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., on behalf of himself and all others similarly situated.

## JURISDICTION, VENUE, AND STANDING

2.     This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants transact business in this district.

4.      "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)).

5.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)).  Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing.  *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA"); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6.      "The Supreme Court has held time and again that the violation of a statutory right to receive information one is entitled to receive creates a concrete injury sufficient to confer standing on a plaintiff." *Zia v. CitiMortgage, Inc.*, 210 F. Supp. 3d 1334, 1343 (S.D. Fla. 2016).

7.      "The FDCPA does create an informational right which did not exist prior to its enactment, and that right is tied to the harm which a consumer may suffer if not provided with that information. Consequently, the deprivation of that information is, in most cases, sufficient to confer Article III standing. That was the law before *Spokeo*, and that law was not based on an erroneous understanding of Article III like the one corrected by *Spokeo*, but by application of well-settled principles of standing jurisprudence which *Spokeo* did not change (and, in fact, upon which *Spokeo* relied)." *Hagy v. Demers & Adams, LLC*, No. 2:11-CV-530, 2017 WL 1134408, at *4 (S.D. Ohio Mar. 27, 2017).

8.      "[N]umerous other courts, including courts in this circuit and from around the country, have rejected *Spokeo*-based standing challenges in the context of FDCPA violations." *Neeley v. Portfolio Recovery Assocs., LLC*, No. 115CV01283RLYMJD, 2017 WL 3311045, at *2 (S.D. Ind. Aug. 2, 2017) (citing *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *4, 2017 U.S. Dist. LEXIS 89678, at *11 (E.D. Wis. June 12, 2017)) (collecting cases).

9.      "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

## THE FAIR DEBT COLLECTION PRACTICES ACT

10.     Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

11.     To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute [and] proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim" *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1046 (W.D. Wis. 2002).

12.     In order to offer the greatest protections to consumers, "the FDCPA is a strict liability statute – a collector 'need not be deliberate, reckless, or even negligent to trigger liability." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009); *see also Anderson v. Credit Bureau Collection Services, Inc.*, 422 Fed. Appx. 534, 539 (7th Cir. 2011) ("This means [Plaintiff] is entitled to sue to enforce [the FDCPA's] provisions, even the "highly technical" ones . . .").

13.     "Because the FDCPA is designed to protect consumers, it is liberally construed in favor of consumers to effect its purpose." *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008).

14.     "[C]laims against debt collectors under the FDCPA are to be viewed through the eyes of the 'unsophisticated consumer' . . . the standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *see also*

*Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir. 1994) ("an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness.").

## PARTIES

15.    Plaintiff is a natural person who at all relevant times resided in the State of Illinois, County of Douglas, and City of Tuscola.

16.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

17.    Tepper is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

18.    Tepper is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

19.    Midstate is an entity who acquires debts in default merely for collection purposes, and who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

20.    Midstate is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

21.    Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed or due a creditor other than Tepper.

22.    Plaintiff's alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred

primarily for personal, family, or household purposes—namely, personal medical services (the "Debt").

23.     Tepper uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

24.     Tepper regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

25.     Midstate is a debt buyer that purchases large volumes of defaulted debt at a deep discount and then profits by collecting the receivables at close to face value.

26.     Midstate purchases debts once owed or once due, or asserted to be once owed or once due, a creditor.

27.     The principal purpose of Midstate's business is the collection of debts.

28.     Midstate acquired Plaintiff's Debt when it was allegedly in default.

29.     Midstate retained Tepper to collect the Debt from Plaintiff on its behalf.

30.     In connection with the collection of the Debt, Tepper, on behalf of Midstate, sent Plaintiff a letter dated May 17, 2017.

31.     A true and accurate copy of the May 17, 2017 letter is attached as Exhibit A.

32.     The May 17, 2017 letter was Tepper's initial communication with Plaintiff with respect to the Debt.

33.     The May 17, 2017 letter purported to contain the notices required in an initial communication by 15 U.S.C. § 1692g(a). *See* Exhibit A.

34.     However, Tepper's May 17, 2017 letter does not give the statement that a dispute must be in writing in order for Tepper to obtain and send verification of the Debt. 15 U.S.C. § 1692g(a)(4).

## CLASS ALLEGATIONS

35.     Plaintiff repeats and re-alleges all factual allegations above.

36.     Tepper's May 17, 2017 letter is based on a form or template used by Tepper to send collection letters (the "Template").

37.     The Template fails to meaningfully convey to the consumer that a dispute of the debt, or any portion thereof, must be made in writing in order for Tepper to obtain verification of the alleged debt or a copy of a judgment against the consumer, in the same manner as Tepper did with Plaintiff above.

38.     Tepper has used the Template to send collection letters to over 40 individuals in the state of Illinois within the year prior to the filing of the original complaint in this matter.

39.     Plaintiff brings this action on behalf of himself and all others similarly situated.  Specifically, Plaintiff seeks to represent the following class of individuals:

All persons with an Illinois address, to whom Tepper sent a letter based upon the Template, within one year before the date of this complaint, in connection with the collection of a consumer debt.

40.     Of that class, Plaintiff seeks to represent the following subclass of individuals:

All persons with an Illinois address, to whom Tepper sent a letter based upon the Template, within one year before the date of this complaint, in connection with the collection of a consumer debt, alleged to be owed to Midstate.

41.    The proposed class specifically exclude the United States of America, the State of Illinois, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Seventh Circuit, and the Justices of the United States Supreme Court, all officers and agents of Defendants, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

42.    The class is averred to be so numerous that joinder of members is impracticable.

43.    The exact number of class members are unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

44.    The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendants.

45.    There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of Defendants' identical conduct particular to the matters at issue; (b) Defendants' violations of the FDCPA; (c) the availability of statutory penalties; and (d) attorneys' fees and costs.

46.    Plaintiff's claims are typical of those of the class he seeks to represent.

47.    The claims of Plaintiff and of the class originate from the same conduct, practice, and procedure on the part of Defendants. Thus, if brought and prosecuted

individually, the claims of the members of the class would require proof of the same material and substantive facts.

48.    Plaintiff possesses the same interests and have suffered the same injuries as each class member. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

49.    Plaintiff will fairly and adequately protect the interests of the class and have no interests adverse to or which directly and irrevocably conflict with the interests of other members of the class.

50.    Plaintiff is willing and prepared to serve this Court and the proposed class.

51.    The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

52.    Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

53.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

54.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of

the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

55.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendants have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

56.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

57.     Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692g(a)(4)
### Tepper

58.     Plaintiff repeats and re-alleges each factual allegation above.

59.    A key provision of the FDCPA is § 1692g, which requires a debt collector to send, within five days of its initial communication with a consumer, a written notice which provides information regarding the debt and informs the consumer of his or her right to dispute the validity of the debt, and/or request the name and address of the original creditor, within 30 days of receipt of the notice.  *See* 15 U.S.C. § 1692g(a).

60.    Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. *Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir. 2000) (citing *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991)).

61.    This validation requirement is a "significant feature" of the law that aimed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."  *See Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1070 (9th Cir. 2016) (citing S. Rep. No. 95-382, at 4 (1977)).

62.    "To satisfy § 1692g(a), the debt collector's notice must state the required information 'clearly enough that the recipient is likely to understand it.'" *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) (quoting *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)); *see also Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997) (debt collector may not defeat the Act's purpose by "making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude."); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir. 1996) ("We recognize there

are many cunning ways to circumvent § 1692g under cover of technical compliance, but purported compliance with the form of the statute should not be given sanction at the expense of the substance of the Act.") (internal citation omitted).

63.  With respect to § 1692g(a)(4), "[t]he statute is clear. The debt collector 'shall' notify the consumer of her right to dispute the debt in writing." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016).

64.  Tepper violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey to Plaintiff that a dispute of the debt, or any portion thereof, must be made in writing in order to obtain verification of the alleged debt or a copy of a judgment against Plaintiff.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purpose;

b)  Adjudging that Tepper violated 15 U.S.C. § 1692g(a)(4) with respect to Plaintiff and the class he seeks to represent;

c)  Awarding Plaintiff and the class he seeks to represent actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding Plaintiff such additional damages as the Court may allow in the amount of $1,000, pursuant to § 1692k(a)(2)(B)(i);

e)  Awarding all other class members such amount as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of

$500,000 or one percent of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

f)  Awarding Plaintiff and the class he seeks to represent, reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3) and Rule 23;

g)  Awarding Plaintiff and the class he seeks to represent, pre-judgment and post-judgment interest as permissible by law; and

h)  Awarding such other and further relief as the Court may deem proper.

### COUNT II
### VIOLATION OF 15 U.S.C. § 1692g(a)(4)
### Midstate

65.    Plaintiff repeats and re-alleges each factual allegation above.

66.    Tepper violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey to Plaintiff that a dispute of the debt, or any portion thereof, must be made in writing in order to obtain verification of the alleged debt or a copy of a judgment against Plaintiff.

67.    Midstate, by virtue of its status as a "debt collector" under the FDCPA, is liable for the conduct of Tepper—the debt collector it retained to collect on its behalf.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purpose;

b)  Adjudging that Midstate violated 15 U.S.C. § 1692g(a)(4) with respect to Plaintiff and the subclass he seeks to represent;

c) Awarding Plaintiff and the subclass he seeks to represent actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiff such additional damages as the Court may allow in the amount of $1,000, pursuant to § 1692k(a)(2)(B)(i);

e) Awarding all other subclass members such amount as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or one percent of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

f) Awarding Plaintiff and the subclass he seeks to represent, reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3) and Rule 23;

g) Awarding Plaintiff and the subclass he seeks to represent, pre-judgment and post-judgment interest as permissible by law; and

h) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

68.    Plaintiff is entitled to and hereby demands a trial by jury.

Dated: November 14, 2017                    Respectfully submitted,

s/ Russell S. Thompson IV
Russell S. Thompson IV
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave D106-618
Mesa, AZ 85206
(602) 388-8898
(866) 317-2674 fax
rthompson@consumerlawinfo.com